McCLENDON, J.
[PIn this workers’ compensation case, the deceased claimant’s legal successor appeals a judgment awarding medical and indemnity benefits, but denying penalties and attorney fees. For the reasons that follow, we amend in part, and, as amended, affirm.
FACTUAL AND PROCEDURAL HISTORY
On January 27, 2000, Patrick Gautreaux was seriously injured when a large tree, which he was cutting, fell, crushing him to the ground. Mr. Gautreaux remained in a coma until his death on October 11, 2007.
At the time of the accident, Arabie Brothers Trucking Company (Arabie) was clearing a commercial site for the construction of a video store in Houma, Louisiana. Arabie sub-contracted with A & G Tree and Stump Removal (A <& G) to grind and remove two stumps at the site. Mr. Gautreaux, an employee of A & G, was sent to the construction site to grind the two stumps. Mr. Gautreaux ground one of the stumps, but the second tree had not been cut, and as Mr. Gautreaux began to cut the tree, it fell on him. Following the accident, Arabie, through its workers’ compensation insurer, American Interstate Insurance Company (American), began paying workers’ compensation benefits to and medical expenses on behalf of Mr. Gau-treaux.
On October 5, 2000, Arabie and American filed a disputed claim for compensation and petition for declaratory judgment with the Office of Workers’ Compensation *1091 (OWC) against Mr. Gautreaux, Graham Neill, individually and as the owner of A & G, and A & G, asserting that Mr. Gau-treaux was not in the course and scope of his employment with A & G at the time of the accident and that the accident did not arise out of his employment. Mr. Gau-treaux answered, reconvened, and filed a cross claim. In his reeonventional demand, Mr. Gautreaux asserted that Arabie was his employer, statutory employer, or borrowing employer, entitling him to workers’ compensation benefits. In his cross claim, Mr. Gautreaux contended that Mr. Neill, individually and as owner of RA & G, was his employer or statutory employer, entitling him to workers’ compensation benefits.
After a trial on the merits, judgment was signed on December 4, 2002, in favor of Arable and American. The OWC determined that Mr. Gautreaux’s injuries did not occur while in the course and scope of his employment with A & G, and, therefore, he was not entitled to further workers’ compensation benefits. On appeal, this court reversed in part, finding that Mr. Gautreaux was a borrowed employee of Arabie, and remanded the matter to the OWC for a determination of the amount of workers’ compensation benefits and/or medicals due. The matter was also remanded for a determination of the amount of penalties and/or attorney fees due, if any.[1] See Arabie Brothers Trucking Co. v. Gautreaux, 03-0120 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, writ denied, 04-2481 (La.12/10/04), 888 So.2d 846.
On remand, the matter was submitted on briefs, and on July 29, 2010, the OWC rendered oral reasons for judgment, awarding Mr. Gautreaux medical and indemnity benefits, but declining to award him penalties and attorney fees. Judgment in Mr. Gautreaux’s favor was signed on August 9, 2010, in accordance with the oral reasons, and a timely appeal was filed on behalf of Mr. Gautreaux. Because Mr. Gautreaux was deceased at the time the judgment was signed, we vacated the judgment as null and remanded the matter for the substitution of the legal successor of Mr. Gautreaux and for the rendition and signing of a judgment in favor of the properly substituted party. See Arabie Brothers Trucking Co. v. Gautreaux, 10-1999 (La.App. 1 Cir. 6/10/11), 2011 WL 2979977 (unpublished).
Thereafter, Mary Gautreaux, Mr. Gau-treaux’s mother, filed a motion to be substituted as the proper party plaintiff, which was granted on February 29, 2012.[2] Also on February 29, 2012, and for the reasons rendered on July 29, |42010, a Judgment Incorporating Substituted Party Plaintiff was signed.[3] Ms. Gautreaux has appealed and asserts that the OWC erred in failing to award penalties and attorney fees, in failing to give Mr. Gautreaux the presumption of a forty-hour work week and calculating indemnity benefits in accordance therewith, and in failing to award her costs. Ms. Gautreaux also asked for attorney fees for the preparation and work on the appeal.
PENALTIES AND ATTORNEY FEES
Ms. Gautreaux initially argues that the OWC erred in failing to award penalties *1092 and attorney fees. She contends that the OWC committed manifest error in concluding that Arabie and American “reasonably controverted” the claims of Mr. Gautreaux. Ms. Gautreaux maintains that there was no excuse for the late payment of medical bills from Touro Rehabilitation Center (Touro) and Terrebonne General Medical Center (TGMC).
Pursuant to LSA-R.S. 23:1201 F, an employer or insurer may be assessed with penalties and attorney fees for the failure to provide payment in accordance with Section 1201. Under the applicable statutory provisions of Subsection 1201F, penalties and attorney fees are recoverable unless “the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” LSA-R.S. 23:1201 F(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890. A determination of whether an employer has reasonably controverted a claim is a question of fact and is subject to the manifest error standard of review. Atwell v. First General Services, 06-0392 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 357, writ denied, 07-0126 (La.3/16/07), 952 So.2d 699.
Further, awards of penalties and attorney fees in workers’ compensation cases are essentially penal in nature, being imposed to discourage indifference Land undesirable conduct by employers and insurers. Iberia Medical Center v. Ward, 09-2705 (La.11/30/10), 53 So.3d 421, 433-34. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Id. at 434. An employer should not be liable for penalties or attorney fees for taking a close factual or legal question to court for resolution. Brown v. A M Logging, 10-1440 (La.App. 1 Cir. 8/4/11), 76 So.3d 486, 496.
Pamela Hickman, the field claims adjuster for American, testified that when Mr. Gautreaux’s claim came in, she conducted a preliminary investigation and saw several issues, including whether Mr. Gau-treaux was an employee of Arabie, American’s insured, since Mr. Gautreaux was directly employed by A & G.[4] Ms. Hickman also testified that there was an issue of intoxication, because Mr. Gautreaux tested positive on a drug test following the accident. However, no confirmation levels were taken, and there was no other evidence that Mr. Gautreaux was intoxicated. Thus, according to Ms. Hickman, due to the severity of the injuries and without the confirmation levels, American decided to pay the claim until the OWC decided the course-and-scope issue. She further testified that she had spoken to Mr. Arabie and that he told her that Mr. Gautreaux was never told to cut the tree and, in fact, when Mr. Arabie first heard the saw, he found Mr. Gautreaux and told him to put the saw down. When asked why American paid more than $950,000.00 in this case when the claim might not be compensable, Ms. Hickman stated that American was concerned about tort liability because of Mr. Gautreaux’s severe injuries if American denied the claim. Ms. Hickman further testified that because of the issues involved in this matter, she requested a legal opinion from American’s attorneys.
Ms. Hickman also stated, when asked about the timeliness of American’s payments, that she was not concerned with the time frame for paying these bills, be *1093 cause this was not an ordinary case and there were many questions that had to be resolved.
Rln its oral reasons, the OWC found a legitimate question as to whether Mr. Gau-treaux was acting on his own outside the course and scope of his employment with either A & G or Arabie. The OWC concluded:
This case was reasonably controverted. And because it was reasonably controverted no penalties or attorney’s fees apply regarding any behavior of the employer or insurer. No attorney’s [fees] or penalties apply for late payments, for nonpayments, for partial payments— anything because the Court finds it is reasonably controverted.
After a thorough review of the record in this matter, we cannot say that the OWC committed manifest error in concluding that Arabie and American reasonably controverted the claims of Mr. Gautreaux. This case presented a close factual issue regarding whether Mr. Gautreaux was in the course and scope of his employment. American paid indemnity and medical benefits on behalf of Mr. Gautreaux because of the severity of his injuries, even though it questioned whether any benefits were due. Mr. Gautreaux’s injuries clearly resulted from an accident within the course of his employment. However, American had ar-ticulable and objective reasons for questioning whether Mr. Gautreaux’s injuries occurred while he was acting within the scope of his employment.
The OWC initially found that Mr. Gau-treaux was not in the course and scope of his employment at the time of the accident. A three-judge panel of this court reversed, with one judge dissenting, finding that Mr. Gautreaux was a borrowed employee of American. Thereafter, the supreme court denied a writ of review. The fact that Arabie and American lost that issue on appeal does not subject them to penalties and attorney fees. The facts of this case establish that Arabie and American had a reasonable basis to believe that compensation benefits were not due to Mr. Gau-treaux. Therefore, because the claim of Mr. Gautreaux was “reasonably controverted” by Arabie and American, we need not address the timeliness of the payments by American to Touro and TGMC. See LSA-R.S. 23:1201 F(2).
Finding that the OWC was not clearly wrong in this factual finding, Ms. Gau-treaux’s first specification of error is without merit.
|7FORTY-HOUR PRESUMPTION
Ms. Gautreaux next asserts that the OWC erred in concluding that Mr. Gautreaux was not entitled to the forty-hour work week presumption found in LSA-R.S. 23:1021(12).[5] Ms. Gautreaux *1094 contends that her son worked as often as work was available and that he “did not accept less than forty hours a week voluntarily.”
At trial, Mr. Neill, the owner of A & G, testified, in pertinent part, as follows:
Q. It’s also my understanding that he worked when you had work. So it wasn’t regularly occurring, like he wasn’t working [for] you five days a week—
A. Right.
Q. —forty hours?
A. Right.
Q. And it’s my understanding over a year’s time say, that because certain months when he was trawling, he worked a lot less, and there’s other times he worked more, that on an average, he worked about three days a week over the entire year?
A. Probably.
Q. Does that sound about accurate?
A. Yeah.
|SQ. So you were paying him sixty ($60) dollars a day when he worked, and he worked an average of three days a week?
A. Yeah.
The OWC concluded that Mr. Gau-treaux’s average weekly rate was $80.00 per day for an average of three days a week. In explaining its decision, the OWC noted Ms. Hickman’s testimony at trial that she spoke with Mr. Neill on March 9, 2000, and he told her that he paid Mr. Gautreaux $80.00 per day in cash and that he worked about three days a week. Thus, the OWC based its payment of benefits to Mr. Gautreaux on the average weekly wage of $240.00. The OWC also noted that Mr. Neill changed his testimony two years later at trial when he stated that he paid Mr. Gautreaux $60.00 per day and that Mr. Gautreaux worked three days a week. While the testimony at trial may have been different as to the amount paid to Mr. Gautreaux, no evidence or testimony was presented to show that Mr. Gau-treaux was anything other than a worker paid by the day. He was not an employee “paid on an hourly basis.” See LSA-R.S. 23:1021(12)(a). After a thorough review of the record, we can find nothing that indicates that Mr. Gautreaux was an hourly employee. Therefore, the presumption found in LSA-R.S. 23:1021(12)(a) does not apply, and this assignment of error is without merit.
COSTS
In her third assignment of error, Ms. Gautreaux asserts that the OWC erred in failing to award her costs since Mr. Gau-treaux was successful “on all issues relating to the medical bills.” Particularly, she seeks the costs for the depositions of Allison Bonner and Judy Mallery, which she asserts were submitted to explain the billing process and payment regarding the bills.
In workers’ compensation cases, the awarding of costs is governed by LSA-R.S. 23:1317 B, pursuant to which the matter lies within the sound discretion | flof the OWC.[6] Nitcher v. Northshore Regional *1095 Medical Center, 11-1761 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1013, writ denied, 12-1230 (La.9/21/12), 98 So.3d 342. In this case, although the judgment was silent on the issue of costs, the OWC, in its reasons, stated that it would not assess costs against Arabie and American.
After our complete review of the record, we conclude that the OWC abused its discretion in failing to award costs to Ms. Gautreaux. Although the OWC initially denied Mr. Gautreaux’s claims, this court reversed, and remanded the matter for a determination of the amount of workers’ compensation benefits and/or medical benefits due. Further, on remand, the OWC awarded Mr. Gautreaux medical and indemnity benefits. Because Mr. Gau-treaux was ultimately successful on all issues regarding the payment of medical bills, we amend the judgment and order that Arabie and American pay the costs of this matter, including the costs of the depositions of Ms. Bonner and Ms. Mallery.
ADDITIONAL ATTORNEY FEES
Lastly, Ms. Gautreaux has asked for a reasonable attorney fee for the preparation of this appeal. Having found that no penalties and attorney fees are due under LSA-R.S. 23:1201 F, because the claim was reasonably controverted, we decline to award additional attorney fees.
CONCLUSION
Based on the foregoing, we amend the February 29, 2012 judgment of the OWC and order that Arabie and American pay the costs of this matter, including the costs of the depositions of Allison Bonner and Judy Mallery. In all other respects, the judgment is affirmed. Costs of this appeal shall be shared |inequally by Mary Gau-treaux and by Arabie Brothers Trucking Company and A & G Tree and Stump Removal.
JUDGMENT AMENDED, AND, AS AMENDED, AFFIRMED.

. This court also affirmed the judgment insofar as it granted the claim for indemnification by Arabie and remanded for a determination of the amount of contribution due by A & G to Arabie and American.

. Mr. Gautreaux's father died on May 11, 2007.

.With the exception of the substituted party plaintiff, the judgment signed on February 29, 2012, was identical to the one signed on August 9, 2010.

. A & G had no workers’ compensation insurance at the time of Mr. Gautreaux’s accident.

. At the time of Mr. Gautreaux’s injury, LSA-R.S. 23:1021(10) provided, in pertinent part:
"Wages” means average weekly wage at the time of the accident, The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i)If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
*1094 After Mr. Gautreaux’s injury, LSA-R.S. 23:1021(10) was redesignated as LSA-R.S. 23:1021(12) pursuant to the Louisiana Law Institute. See Guillory v. Bofinger’s Tree Service, 06-0086 (La.App. 1 Cir. 11/3/06), 950 So.2d 682, 689 n. 2.

. Ms. Gautreaux also refers to LSA-R.S. 23:1310.9, which provides that if the OWC determines that the proceedings have not been brought on a reasonable ground or that the denial of benefits was not based on a reasonable ground, then all costs should be assessed against the party responsible for *1095 bringing the proceedings or the party who unreasonably denied the payment of benefits. However, an award of the total costs of the proceedings is mandatory under this statute only upon a finding that a compensation proceeding was not brought on a reasonable ground or that denial of benefits was not based on a reasonable ground. Since the OWC made no such finding in this case, LSA-R.S. 23:1310.9 is not applicable herein. See Nitcher v. Northshore Regional Medical Center, 11-1761 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1013 n. 4, writ denied, 12-1230 (La.9/21/12), 98 So.3d 342.